ENRIQUE RAMÍREZ PROSPERI, recurrente, *v.* REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

No. 730.—*Sometido:* Julio 23, 1928. *Resuelto:* Noviembre 9, 1928.

*Juan J. Toro,* abogado del recurrente; el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Miguel Perdomo Vélez, menor emancipado, asistido por su padre Domingo Perdomo Ramos, otorgó ante el notario Juan Juan Toro, en 25 de mayo de 1928, una escritura en la que manifestó ser dueño de una finca rústica de dos y media cuerdas, en el barrio de Sabana Grande Abajo, en el término municipal de San Germán, cuya finca se describe, y en cuanto a su título dijo que tal finca era el resto de una de mayor cabida que se le adjudicó en la división del caudal hereditario de Miguel Perdomo Pagán; y sobre esa finca, en la ameritada escritura, constituyó el Sr. Perdomo Vélez, hipoteca voluntaria a favor de Enrique Ramírez Prosperi, por cierta suma.

El Registrador de la Propiedad de San Germán denegó la inscripción de la copia de esa escritura, por aparecer del registro la finca de ocho cuerdas de terreno, sin que resulte de inscripción o nota marginal que se hayan hecho segregaciones, y por no haberse hecho en la escritura descripción de la finca de que se dice ser resto la hipotecada; y por no

habërse acompañado al documento cuya inscripción se solicita, la copia de la escritura de emancipación del otorgante, y sí solamente una certificación del Registro Civil en la que se hace constar la inscripción de la emancipación de Perdomo Vélez, que el registrador no considera suficiente, porque entiende que debe calificar la escritura de emancipación. Contra esa nota se ha interpuesto el presente recurso, por Enrique Ramírez Prosperi. Este y el registrador han presentado sus alegatos.

■ El registrador tiene razón en cuanto se refiere a que la falta de descripción de la finca de que puede ser resto la que se grava en esta escritura, constituye un defecto. Pero no tiene razón para calificarlo como insubsanable, ya que es evidente que el otorgamiento de una escritura aclaratoria, en que se describa la finca principal, y se reseñan y determinan las segregaciones que de la misma se han hecho cura el defecto o falta; ésta no es de las comprendidas en los párrafos tercero y cuarto del artículo 65 de la Ley Hipotecaria, porque no produce *necesariamente la nulidad de la obligación,* si se examina a la luz del artículo 110 del Reglamento para la ejecución de la Ley Hipotecaria, cuyo texto es éste:

"Para distinguir las faltas subsanables de las que no lo sean, y hacer o no en su consecuencia una anotación preventiva, según lo dispuesto en los artículos 65 y 66 de la ley, atenderá el registrador a la validez de la obligación consignada en el título. Si ésta fuese nula por su naturaleza, condiciones, calidad de las personas que la otorguen u otra causa semejante, independiente de su forma extrínseca, se considerará la falta como no subsanable. Si la obligación fuese válida, atendidas las circunstancias dichas, y el defecto estuviese tan sólo en la forma externa del documento que la contenga, y que se pueda reformar o extender de nuevo a voluntad de los interesados en la inscripción, se tendrá por subsanable la falta."

La nulidad de la obligación es la piedra de toque para la calificación de la falta.

■ En cuanto a que no se acompaña la copia de la escritura de emancipación, entendemos que esa copia es indispen-

sable para que el registrador pueda calificar la capacidad del otorgante emancipado. No basta la certificación del Registro Civil, que puede ser una prueba del estado del otorgante, pero no de su capacidad para contratar con respecto a bienes inmuebles.

Si la falta es o no insubsanable, es algo más difícil de precisar. No puede, en el momento, y a la luz del texto legal antes citado, afirmarse que el contrato contenido en el documento que se trata de hacer inscribir, sea nulo; y la afirmación de que sea válido, tampoco puede hacerse. Pudiera ser que la escritura de emancipación fuera perfecta, y así lo fueran sus consecuencias; y entonces la escritura de que se trata en este recurso, sería inscribible. Y pudiera ocurrir que de la escritura de emancipación no apareciera capacidad en el emancipado para realizar el contrato de cuya inscripción se trata.

Aun bajo el imperio de la Ley Hipotecaria íntegra, esto es, antes de las enmiendas, se daba frecuentemente el caso de faltas que podían ser subsanables o no, según ciertas circunstancias. Y, después de las enmiendas, Ley de 1 de marzo de 1902, Secciones 2180 a 2190, Estatutos Revisados de 1911, es mucho más arriesgado determinar esa calidad. La falta subsanable permite la inscripción con la constancia de que tal falta existe. La insubsanable acarrea la denegación, y la toma de anotación preventiva. Consecuencia de estas disposiciones legales es la de que pueda inscribirse con la constancia de falta subsanable un contrato que, en la realidad, tenga un defecto insubsanable.

La calificación más liberal se ajusta mejor al propósito de las enmiendas a la ley; y en ese sentido debe calificarse esta falta como subsanable.

*Se revoca la nota del registrador, ordenándose la inscripción solicitada, consignando como subsanable los defectos apuntados por el registrador.*